**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| SOLARIS, INC., | ) | Civil Action No.: 2:20-cv-4444-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AMENDED COMPLAINT** |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, **MONTGOMERY** | ) | |
| **MUTUAL INSURANCE COMPANY**, | ) | |
| **AMTRUST INSURANCE COMPANY**, | ) | |
| AMERICAN SOUTHERN INSURANCE | ) | |
| COMPANY, NATIONWIDE MUTUAL | ) | |
| INSURANCE COMPANY, **EMC** | ) | |
| **PROPERTY AND CASUALTY** | ) | |
| **COMPANY**, **UNIVERSAL** | ) | |
| **INSURANCE COMPANY**, BUILDERS | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| OHIO CASUALTY INSURANCE | ) | |
| COMPANY, FEDERATED MUTUAL | ) | |
| INSURANCE COMPANY, **PENN** | ) | |
| **NATIONAL SECURITY INSURANCE** | ) | |
| **COMPANY**, AMERISURE MUTUAL | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendants. | ) | |

The undersigned on behalf of Plaintiff Solaris, Inc. ("Solaris" or "Plaintiff"), complaining

of the Defendants, Liberty Mutual Insurance Company ("Liberty Mutual"), Montgomery Mutual

Insurance Company ("Montgomery Insurance"), AmTrust Insurance Company ("AmTrust"),

American Southern Insurance Company ("American Southern"), Nationwide Mutual Insurance

Company ("Nationwide"), EMC Property and Casualty Company ("EMC"), Universal Insurance

Company ("Universal"), Builders Mutual Insurance Company ("Builders Mutual"), Federated

Mutual Insurance Company ("Federated Mutual"), Penn National Security Insurance Company

("Penn National"), The Main Street American Group ("Main Street")  and Amerisure Mutual

Insurance Co. ("Amerisure Mutual") (all defendants collectively referred to as "Defendants"), would hereby show and allege unto this Honorable Court as follows:

## NATURE OF ACTION

1.      Solaris is in the business of new home construction. Solaris constructed a single-family residence located at 61 Eugena Street on Kiawah Island in South Carolina (the "residence").

2.      Plaintiff has been sued in an underlying case, brought by Emily Heisley as trustee for the Agnes M. Heisley 2004 Trust, which is currently pending in the Charleston County Court of Common Pleas, C/A No. 2017-CP-10-05298 (the "Underlying Action"). The Underlying Action generally alleges property damage caused by alleged faulty construction.

3.      Plaintiff is an "Additional Insured" under various commercial general liability insurance policies (hereinafter the "CGL Policies") sold by the Defendants to Plaintiff's subcontractors, Frank Leigh Painting, Inc. ("Frank Leigh"), Imperial Tile and Stone ("Imperial Tile"), Red Bay Construction, Corp. ("Red Bay"), Scott Wadford General Contracting, LLC ("Scott Wadford"), the Muhler Company, Inc. ("Muhler Company"), Three Oaks Contractors, Inc. ("Three Oaks"), Advanced Concrete Cutting and Coring, Inc. ("Advanced Concrete"), AGL Services, LLC ("AGL Services"), Airtight Sprayfoam of Charleston, LLC ("Airtight"), Atlantic Stone, LLC ("Atlantic Stone"), Aqua Blue Pools of Charleston, Inc. ("Aqua Blue"), D&J Custom Builders, Inc. ("D&J Custom Builders"), and Lepage Millworks ("Lepage"), which contain, among other things, duties on the part of the Defendants to defend and indemnify Plaintiff with respect to the Underlying Action and the claims asserted therein.

4.      Defendants have all either: failed to acknowledge or respond to Plaintiff's demands for defense and coverage, denied defense and coverage, identified and threatened to

invoke policy defenses contrary to the plain language of the CGL policies, and/or have failed to adequately reserve the right to contest coverage under the policies.

5.    This declaratory judgment action seeks the following declaratory relief:

    i.   That the Underlying Action set forth claims that are covered under each of the CGL Policies;

    ii.  That the Defendants have an immediate duty to defend and indemnify Plaintiff with respect to the Underlying Action;

    iii. That, pursuant to the Defendants' CGL Policies, Defendants are obligated to provide coverage to Plaintiff for "property damage" which occurred during the policy period, including any continuation, change or resumption of that "property damage" after the end of the policy period; and

    iv.  That Defendants have failed to adequately reserve the right to contest coverage under the CGL Policies and are thus precluded from doing so.

6.    This declaratory judgment action also seeks to recover damages resulting from Defendants' bad faith actions regarding the Defendants' CGL Policies.

## PARTIES, JURISDICTION, AND VENUE

7.    Plaintiff Solaris is a corporation organized and existing under the laws of the State of South Carolina. Solaris was named as a defendant in the Underlying Action.

8.    Upon information and belief, Defendant Liberty Mutual is a corporation organized and existing in the State of Massachusetts with its principal place of business in Massachusetts. At all times material hereto, Defendant Liberty Mutual was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Simmons

Plumbing, Red Bay Construction, and Frank Leigh Painting, and sold the subject insurance policies covering risks located within the State of South Carolina.

9.      Upon information and belief, Defendant Montgomery Insurance is a corporation organized and existing in the State of New Hampshire with its principle place of business in New Hampshire. At all times material hereto, Defendant Montgomery Insurance was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Simmons Plumbing and AGL Services, and sold the subject insurance policies covering risks located within the State of South Carolina.

10.     Upon information and belief, Defendant AmTrust is a corporation organized and existing in the State of Delaware with its principal place of business in New York. At all times material hereto, Defendant AmTrust was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Wyatt Childs, and sold the subject insurance policies covering risks located within the State of South Carolina.

11.     Upon information and belief, Defendant American Southern is a corporation organized and existing in the State of Georgia with its principle place of business in Georgia. At all times material hereto, Defendant American Southern was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Imperial Tile, and sold the subject insurance policies covering risks located within the State of South Carolina.

12.     Upon information and belief, Defendant Nationwide is a corporation organized and existing in the State of Delaware with its principle place of business in Ohio. At all times material hereto, Defendant Nationwide was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, LMS Stucco, and sold the subject insurance policies covering risks located within the State of South Carolina.

13.    Upon information and belief, Defendant EMC is a corporation organized and existing in the State of Iowa with its principle place of business in Iowa. At all times material hereto, Defendant EMC was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Red Bay Construction, and sold the subject insurance policies covering risks located within the State of South Carolina.

14.    Upon information and belief, Defendant Builders Mutual is a corporation organized and existing in the State of North Carolina with its principle place of business in North Carolina. At all times material hereto, Defendant Builders Mutual was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Airtight Sprayfoam, and sold the subject insurance policies covering risks located within the State of South Carolina.

15.    Upon information and belief, Defendant Universal is a corporation organized and existing in a State other than South Carolina with its principle place of business in North Carolina. At all times material hereto, Defendant Universal was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, D&J Custom Builders, and sold the subject insurance policies covering risks located within the State of South Carolina.

16.    Upon information and belief, Defendant Federated Mutual is a corporation organized and existing in the State of Minnesota with its principle place of business in Minnesota. At all times material hereto, Defendant Federated Mutual was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Frank Leigh Painting, and sold the subject insurance policies covering risks located within the State of South Carolina.

17.    Upon information and belief, Defendant Penn National is a corporation organized and existing under the laws of one of the fifty states other than South Carolina with its principle

place of business in Harrisburg, Pennsylvania. At all times material hereto, Defendant Penn National was in the business of selling contracts of insurance to contractors such as Plaintiff's subcontractor, Frank Leigh Painting, and sold the subject insurance policies covering risks located within the state of South Carolina.

18.    Upon information and belief, Defendant Main Street is a corporation organized and existing under the laws of Minnesota with its principle place of business in Minnesota. At all times material hereto, Defendant Main Street was in the business of selling contracts of insurance to contractors such as Plaintiff's subcontractor, Woodmasters, and sold the subject insurance policies covering risks located within the state of South Carolina.

19.    Upon information and belief, Defendant Amerisure is a corporation organized and existing under the laws of one of the fifty states other than South Carolina with its principle place of business in Michigan. At all times relevant hereto, Defendant Amerisure was in the business of selling contracts of insurance to contractors, such as Plaintiff's subcontractor, Woodmasters, and sold the subject insurance policies covering risks located within the state of South Carolina.

20.    The alleged property damage and events giving rise to this action occurred in Charleston County, South Carolina, and the amount in controversy is in excess of $75,000. There is complete diversity of citizenship between the Plaintiff and the Defendants. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and venue is proper in the Charleston Division.

## **FACTUAL ALLEGATIONS**

21.    Emily Heisley, as trustee for the Agnes M. Heisley 2004 Trust and as successor in interest for the Michael E. Heisley 1994 ("plaintiff") purchased two properties on Kiawah Island to build a single-family residence (the "residence").

22. The Heisley's entered into a contract with Solaris to construct the residence.

23. Solaris contracted with the following subcontractors who performed work on the residence: Frank Leigh Painting, Scott Wadford, Imperial Tile, Red Bay Construction, AGL Services, Lepage, Muhler, Three Oaks, Advanced Concrete Cutting, Airtight Sprayfoam, Atlantic Stone, Aqua Blue Pools, Woodmasters, Wyatt Childs, Clark's Services, JEM Construction, Simmons Plumbing, LMS Stucco, and D&J Custom Builders.

24. Upon information and belief, all construction work performed at the residence which is the subject of the Underlying Action was performed by subcontractors.

25. The residence that is the subject of the Underlying Action received its Certificate of Occupancy in November of 2010.

26. Solaris' contracts with Frank Leigh Painting, Scott Wadford, Imperial Tile, Red Bay Construction, AGL Services, Lepage, Muhler, Three Oaks, Advanced Concrete Cutting, Airtight Sprayfoam, Atlantic Stone, Aqua Blue Pools, Woodmasters, Wyatt Childs, Clark's Services, JEM Construction, Simmons Plumbing, LMS Stucco, and D&J Custom Builders required the aforementioned subcontractors to the following, without limitation:

    i. Maintain CGL insurance coverage, including completed operations coverage;

    ii. To insure Solaris with primary coverage as an additional insured on the sub-contractors' CGL Policies; and

    iii. To provide Solaris with a certificate of insurance showing these coverages were in place prior to commencing work on the residence.

## THE INSURANCE POLICIES

27.     Upon information and belief, Defendants provided insurance coverage to some and/or all of Plaintiff's subcontractors, and to Plaintiff as an "Additional Insured" as outlined below:

| Insurance Company | Named Insured (Sub-Contractor) | Additional Insureds |
|---|---|---|
| Liberty Mutual | Simmons Plumbing Red Bay Construction Frank Leigh Painting | Plaintiff |
| Montgomery Insurance | Simmons Plumbing AGL Services | Plaintiff |
| AmTrust | Wyatt Childs | Plaintiff |
| American Southern | Imperial Tile | Plaintiff |
| Nationwide | LMS Stucco | Plaintiff |
| EMC | Red Bay Construction | Plaintiff |
| Universal Insurance Company | D&J Custom Builders | Plaintiff |
| Builders Mutual Insurance Company | Airtight Sprayfoam | Plaintiff |
| Federated Insurance Company | Frank Leigh Painting | Plaintiff |
| Penn National Insurance Company | Frank Leigh Painting | Plaintiff |
| Main Street America | Woodmasters | Plaintiff |
| Amerisure | Woodmasters | Plaintiff |

### Liberty Mutual Policies

28.     Upon information and belief, Liberty Mutual provided CGL insurance coverage to Plaintiff's subcontractor, Simmons Plumbing, from July 5, 2017 through July 5, 2020, Policy No. BKS 19 57 19 96.

29.     Pursuant to the contract between Solaris and Simmons Plumbing, Simmons Plumbing agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

30.    The Insuring Agreement in the Liberty Mutual Policies provides, in relevant part:

****

**SECTION I**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

      a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
        ...

      b.  This insurance applies to "bodily injury" and "property damage" ...if:

            (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (2) The "bodily injury" or "property damage" occurs during the policy period.
               ...

      c.  "Bodily injury" or "property damage" which occurs during the policy period...includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

****

31.    The Liberty Mutual Policies define "occurrence" and "property damage" as follows:

****

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
...

17. "Property damage" means:

      a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

d. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*\*

32.    The Liberty Mutual Policies include a Commercial General Liability Extension endorsement, which provides, in relevant part:

\*\*\*\*

**G. ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT**

1. Paragraph 2. under Section II – Who Is An Insured is amended to include as an insured any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit. Such person or organization is an additional insured but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused in whole or in part by:

a. Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your ongoing operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" or "property damage" occurs, or the "personal or advertising injury" is committed, subsequent to the signing of such written contract or agreement;
...

However:

1.  The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.  If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to Paragraph 1.a. above, a person's or organization's status as an additional insured under this endorsement ends when:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has bene put to its intended use by any person or organization other than another contractor or subcontractor engaging in performing operations for a principal as a part of the same project.

...

The insurance provided by this endorsement applies only if the written contract or written agreement is signed prior to the "bodily injury" or "property damage."

...

2. With respect to the insurance provided by this endorsement, the following are added to Paragraph 2. Exclusions under Section I – Coverage A – Bodily Injury and Property Damage Liability:

This insurance does not apply to:

a. "Bodily injury" or "property damage" arising from the sole negligence of the additional insured.

b. "Bodily injury" or "property damage" that occurs prior to you commencing operations at the location where such "bodily injury" or "property damage" occurs.

...

d. "Bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

****

33.     Upon information and belief, Liberty Mutual provided CGL insurance coverage to Plaintiff's subcontractor, Red Bay, from April 30, 2009 through April 30, 2016, Policy No. CBP 8655246.

34.    Pursuant to the contract between Solaris and Red Bay, Red Bay agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

35.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Liberty Mutual are substantially similar to those CGL Policies issued by the other Defendants in this case.

36.    Upon information and belief, Liberty Mutual provided CGL insurance coverage to Plaintiff's subcontractor, Frank Leigh Painting, from October 1, 2009 through October 10, 2011, Policy No. BKO 52769084.

37.    Pursuant to the contract between Solaris and Frank Leigh Painting, Frank Leigh Painting agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

38.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Liberty Mutual are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>Montgomery Insurance Policies</u>

39.    Upon information and belief, Montgomery Insurance provided CGL insurance coverage to Plaintiff's subcontractor, Simmons Plumbing, from July 5, 2010 through July 5, 2017, Policy No. CPP8299375.

40.    Pursuant to the contract between Solaris and Simmons Plumbing, Simmons Plumbing agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

41.    The Montgomery Insurance Policies include a Commercial General Liability Extension endorsement, which provides, in relevant part:

\*\*\*\*

I.    **ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT**
Paragraph 2. Under SECTION II – WHO IS AN INSURED is amended to include as an insured any person or organization when you and such person or organization have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy to provide insurance such as is afforded under this Coverage Part. Such person or organization is an additional insured only with respect to liability arising out of:

a.    Your ongoing operations performed for that person or organization; or
...

With respect to provision 1.a. above, a person's or organization's status as an insured under this endorsement ends when your operations for that person or organization are completed.
...

3.    This endorsement provision I. does not apply:

a.    Unless the written contract or agreement has been executed, or permit has been issued, prior to the "bodily injury," "property damage" or "personal advertising injury";

b.    To "bodily injury" or "property damage" occurring after:
(1) All work, including materials, parts or equipment furnished in connection with such work, in the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or
(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

\*\*\*\*

42.    Upon information and belief, Montgomery Insurance provided CGL insurance coverage to Plaintiff's subcontractor, AGL Services, from May 10, 2010 through May 10, 2017, Policy No. CCP8433647.

43.     Pursuant to the contract between Solaris and AGL Services, AGL Services agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

44.     The Certificate of Insurance lists "Solaris, Inc." as a Certificate Holder and names it as an additional insured with respect to General Liability and Auto Liability for work performed by the named insured when required by written contract.

45.     The Montgomery Insurance Policies include a Commercial General Liability Extension endorsement, which provides, in relevant part:

****

**II.    ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT**
        Paragraph 2. Under SECTION II – WHO IS AN INSURED is amended to include as an insured any person or organization when you and such person or organization have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy to provide insurance such as is afforded under this Coverage Part. Such person or organization is an additional insured only with respect to liability arising out of:

        a.   Your ongoing operations performed for that person or organization; or
        ...

        With respect to provision 1.a. above, a person's or organization's status as an insured under this endorsement ends when your operations for that person or organization are completed.
        ...

4.   This endorsement provision I. does not apply:

        a.   Unless the written contract or agreement has been executed, or permit has been issued, prior to the "bodily injury," "property damage" or "personal advertising injury";

        b.   To "bodily injury" or "property damage" occurring after:
             (1) All work, including materials, parts or equipment furnished in connection with such work, in the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

14

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

****

Nationwide Policies

46.     Upon information and belief, Nationwide provided CGL insurance coverage to Plaintiff's subcontractor, LMS Stucco, from February 19, 2009 through May 7, 2011, Policy No. ACP GLKO 2322993855.

47.     Pursuant to the contract between Solaris and LMS Stucco, LMS Stucco agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

48.     The Certificate of Insurance lists "Solaris, Inc." as a Certificate Holder and states that Solaris is included as an additional insured with respect to the general liability for work performed by the named insured when required by written contract.

49.     The Insuring Agreement in the Nationwide Policies provides, in relevant part:

****

**SECTION I**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. ...

b.  This insurance applies to "bodily injury" and "property damage" ...if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period.
...

c. "Bodily injury" or "property damage" which occurs during the policy period...includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

****

50.     The Nationwide Policies define "occurrence" and "property damage" as follows:

****

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
...

17. "Property damage" means:

b. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

d. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

****

51.     The Nationwide Policies include Endorsement CG 20 10 07 04, entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization," which provides, in relevant part:

****

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS –**

**SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name of Additional Insured Person(s) Or Organization(s): |
|---|
| **SOLARIS, INC.**<br>**1896 ANDELL BLUFF BOULEVARD**<br>**JOHNS ISLAND, SC 29455** |
| **Location(s) Of Covered Operations** |
| **ALL LOCATIONS AT WHICH ONGOING OPERATIONS ARE BEING PERFORMED FOR THE ADDITIONAL PERSON(S) OR ORGANIZATION(S)** |

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The act or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

**All terms and conditions of this policy apply unless modified by this endorsement.**

****

<u>Universal Policy</u>

52.    Upon information and belief, Universal provided CGL insurance coverage to Plaintiff's subcontractor, D&J Custom Builders, from November 19, 2010 through November 19, 2011, Policy No. UBO4087482.

53.    Pursuant to the contract between Solaris and D&J Custom Builders, D&J Custom Builders agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

54.    The Insuring Agreement in the Universal Policy provides, in relevant part:

****

**A. COVERAGES**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies.
...

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:
(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory"; and

(b) The "bodily injury" or "property damage" occurs during the policy period.

****

55.    The Universal Policy defines "property damage" and "occurrence" as follows:

****

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
...

12. "Property Damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

****

56.    The Universal Policy includes the following endorsement, entitled "Additional Insured – Owners, Lessees or Contractors," which provides:

****

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY.

**SCHEDULE***

**Name of Person or Organization:**

| The following is added to Paragraph C. WHO IS shown AN INSURED in the Businessowners Liability only Coverage Form: of | 4. The person or organization Schedule is also an insured, but with respect to liability arising out "your work" for that insured by or for you. |
|---|---|

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

****

57.    The Declarations page lists "Solaris, Inc." as an additional insured.

****

19

### Main Street Policies

58.    Upon information and belief, Main Street provided CGL insurance coverage to Plaintiff's subcontractor, Woodmasters, from April 20, 2009 through April 20, 2011, Policy No. MPF56177.

59.    Pursuant to the contract between Solaris and Woodmasters, Woodmasters agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

60.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Main Street are substantially similar to those CGL Policies issued by the other Defendants in this case.

### AmTrust Policies

61.    Upon information and belief, AmTrust provided CGL insurance coverage to Plaintiff's subcontractor, Wyatt Childs, from August 18, 2009 through August 18, 2011, Policy No. 10-W039-01.

62.    Pursuant to the contract between Solaris and Wyatt Childs, Wyatt Childs agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

63.    The Certificate of Insurance lists "Solaris Properties, Inc." as a Certificate Holder.

64.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by AmTrust are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>American Southern Policies</u>

65.    Upon information and belief, American Southern provided CGL insurance coverage to Plaintiff's subcontractor, Imperial Tile, from April 22, 2010 through April 22, 2011, Policy No. GL46696.

66.    Pursuant to the contract between Solaris and Imperial Tile, Imperial Tile agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

67.    The Certificate of Insurance lists "Solaris, Inc." as a Certificate Holder and states that the certificate holder is listed on the general liability policy as an additional insured.

68.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by American Southern are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>Amerisure Mutual Policies</u>

69.    Upon information and belief, Amerisure provided CGL insurance coverage to Plaintiff's subcontractor, Aqua Blue Pools, from January 1, 2010 through January 1, 2011, Policy No. CPP203052005.

70.    Pursuant to the contract between Solaris and Aqua Blue Pools, Aqua Blue Pools agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

71.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Amerisure are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>EMC Policies</u>

72.     Upon information and belief, EMC provided CGL insurance coverage to Plaintiff's subcontractor, Red Bay, from 2016 through 2018, Policy Nos. 5D4-57-30-17 and 5D4-57-30-18.

73.     Pursuant to the contract between Solaris and Red Bay, Red Bay agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

74.     Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by EMC are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>Builders Mutual Policies</u>

75.     Upon information and belief, Builders Mutual provided CGL insurance coverage to Plaintiff's subcontractor, Airtight, from June 30, 2010 through June 30, 2011, Policy No. CPP0042338.

76.     Pursuant to the contract between Solaris and Airtight, Airtight agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

77.     Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Builder Mutual are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>Penn National Policies</u>

78.    Upon information and belief, Penn National provided CGL insurance coverage to Plaintiff's subcontractor, Frank Leigh Painting, from October 1, 2011 through October 1, 2016, under Policy Nos. CX9 0676291 and UL9 0676281.

79.    Pursuant to the contract between Solaris and Frank Leigh Painting, Frank Leigh Painting agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

80.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Penn National are substantially similar to those CGL Policies issued by the other Defendants in this case.

<u>Federated Policies</u>

81.    Upon information and belief, Federated provided CGL insurance coverage to Plaintiff's subcontractor, Frank Leigh Painting, from October 1, 2016 through present, under Policy No. 0698757.

82.    Pursuant to the contract between Solaris and Frank Leigh Painting, Frank Leigh Painting agreed to maintain CGL insurance coverage, including completed operations coverage, and to insure Solaris with primary coverage as an additional insured on its CGL policies.

83.    Upon information and belief, the Insuring Agreement and pertinent Endorsements in the CGL Policies issued by Federated are substantially similar to those CGL Policies issued by the other Defendants in this case.

## UNDERLYING ACTION GIVES RISE TO INSURER DEFENDANTS' DUTIES UNDER THE POLICIES

84.    The Underlying Action seeks substantial damages from Plaintiff and/or Plaintiff's subcontractors based upon alleged property damage. Plaintiff Solaris' contracts with its

subcontractors required those subcontractors to purchase insurance from the Defendants for such claims, and to insure Plaintiff as Additional Insureds with primary coverage under Defendants' CGL Policies. Plaintiff's subcontractors provided Plaintiff Solaris with Certificates of Insurance evidencing the purchase of such coverage from Defendants. Defendants' failure to acknowledge their unqualified obligations to Plaintiff has caused Plaintiff substantial harm.

## SUMMARY OF UNDERLYING ACTION

85.    On October 16, 2017, Emily Heisley as trustee for the Agnes M. Heisley 2004 Trust, filed a lawsuit against, among others, Solaris in the Charleston County Court of Common Pleas, C/A No. 2017-CP-10-05298.

86.    On October 7, 2019, Emily Heisley as trustee for the Agnes M. Heisley 2004 Trust, filed an Amended Complaint. The Amended Complaint also names Plaintiff's subcontractors, including Frank Leigh Painting, Imperial Tile, Red Bay Construction, Scott Wadford, Muhler Company, Three Oaks Contractors, Advanced Concrete, AGL Services, Airtight Sprayfoam, Atlantic Stone, Aqua Blue, D&J Custom Builders, and Lepage Millworks.

87.    Plaintiff brings causes of action against Solaris for alleged property damage which occurred with the Defendants' Policy periods arising from allegedly faulty construction performed by subcontractors.

88.    The progressive property damage alleged by Plaintiff in the Underlying Action including, without limitation, "water intrusion," "improper construction of the wall assembly at baseboards, window doors, decks and other areas," "improper installation of windows," "improper back priming and painting," "improper installation of doors and transoms," "complete failure of Lepage Millwook wood windows," "failure to construct a centerline drainage system with sump pump," "water intrusion through the pool into the foundation," "failure to property

insulate portions of the home," and "failure to flash chimney flue pipe leading to moisture intrusion," all of which resulted in actual and/or consequential damages to include, without limitation, actual costs to repair defects and damages and loss of use.

89.     Plaintiff in the Underlying Action further alleges latent construction defects resulting in repeated unintended, unforeseen, fortuitous, injurious events that have occurred each and every year since November 2010 and constitute "occurrences" and compensable damage. As a result of the alleged negligence, plaintiff seeks to recover compensatory and other damages for the progressive property damage.

90.     Plaintiff's claims in the Underlying Action are allegations of "property damage" caused by an "occurrence" under the Defendants' Policies, which trigger the Defendants' duties to defend and indemnify Plaintiff Solaris.

91.     Upon information and belief, Plaintiff Solaris has complied with its obligations under the Defendants' Policies by providing timely and proper notice of the various claims raised by the Plaintiff in the Underlying Action to the Defendant Insurers and demanding that they honor their duties to defend and indemnify Plaintiff Solaris under the CGL Policies.

**EVENTS GIVING RISE TO DEFENDANTS' WRONGFUL AND BAD FAITH REFUSAL TO DEFEND AND INDEMNIFY**

92.     Upon information and belief, Plaintiff promptly notified Defendants of the claims resulting in the Underlying Action, requested coverage and defense, and provided to Defendants information regarding the claims that comprise the Underlying Action.

93.     The documents Plaintiff provided to Defendants demonstrated clear allegations of progressive property damage covered under Defendants' CGL Policies.

94.     Defendants have not made a good faith attempt to effect the prompt, fair, and equitable settlement of the claims in the Underlying Action.

95.     Defendants have either all improperly denied or failed to acknowledge Plaintiff's request for coverage and defense in the Underlying Action.

96.     Based on Defendants' bad faith denials of coverage and/or lack of response to requests for coverage with regard to the Underlying Action, Defendants have compelled Plaintiff to institute this lawsuit in order to recover amount it is reasonably due or payable with respect to the Underlying Action which have arisen under Defendants' CGL Policies.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

97.     Each and every one of Plaintiff's prior allegations are incorporated herein as if fully restated.

98.     The Underlying Action seeks damages that are covered by the Defendants' Policies and have triggered duties owed by the Defendants to Plaintiff under the Policies, including the Defendants' duties to defend and indemnify Plaintiff.

99.     The claims and damages in the Underlying Action, including, but not limited to, "improper construction of the wall assembly located at baseboards, windows, doors, decks, and other areas of the home," "improper installation of windows," "improper back priming and painting of the windows and siding," "improper installation of doors and transoms," "complete failure of the wood windows," "failure to construct a centerline drainage system with sump pump," "water intrusion to the foundation," "water intrusion to the pool and pool deck," "failure to property insulate portions of the home," and "failure to properly flash chimney flue pipe," that has resulted in substantial "actual damages," "loss of use," and "consequential damages," not only occurred during the Defendants' policy periods but are continuous in nature, as they are caused by repeated or continuous exposure to substantially the same general harmful

condition(s). As a result, these alleged "occurrences" of "property damages" have continued and/or resumed even after the end of the Defendants' policy periods.

100.    All of the Defendants' CGL Policies provide that property damage which occurs during the policy period includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period or substantially similar policy language. This provision obligates Defendants to provide coverage for the damages alleged in the Underlying Lawsuits which occurred and/or resumed after the end of each of their respective policy periods.

101.    Defendants have failed to adequately reserve their rights to contest coverage either by not reserving their rights at all or by providing Plaintiff with ambiguous, generic denials of coverage, coupled with cut-and-paste provisions from the CGL Policies. Therefore, the Defendants should be precluded from contesting coverage as it applies to their duty to indemnify Plaintiff in the Underlying Action.

102.    Plaintiff seeks entry of a Declaratory Judgment declaring the rights and obligations of the Defendants under the Policies with respect to the Underlying Action as follows:

  a. That the Underlying Action sets forth claims that are covered under each of the CGL Policies;

  b. That the Defendants have an immediate duty to defend and indemnify Plaintiff with respect to the Underlying Action;

  c. That, pursuant to the Defendants' CGL Policies, Defendants are obligated to provide coverage to Plaintiff for "property damage" that occurs during the policy

period, including any continuation, change or resumption of that "property damage" after the end of the policy period; and

    d.   That Defendants have failed to adequately reserve the right to contest coverage under the CGL Policies and are thus precluded from doing so.

**FOR A SECOND CAUSE OF ACTION**
**(Bad Faith Refusal to Pay First Party Benefits)**

103.    Each and every one of Plaintiff's prior allegations are incorporated herein as if fully restated.

104.    Defendants have provided no reasonable basis upon which coverage, defense, and indemnity was denied to Plaintiff with regard to the Underlying Action under the CGL Policies. Instead, Defendants have either improperly denied coverage or failed to acknowledge with reasonable promptness pertinent communications with respect to the claims in the Underlying Action, have failed to adopt and implement reasonable standards for prompt investigation and settlement of claims, and have not attempted in good faith to effect prompt, fair, and equitable settlement of the claims.

105.    Defendants have willfully denied coverage and refused to defend or indemnify Plaintiff against the Underlying Action, even in light of applicable South Carolina law and the information Plaintiff provided to Defendants demonstrating clear allegations of progressive property damage that occurred during the time the CGL Policies were in effect.

106.    Defendants' refusal to provide coverage in light of all applicable facts compelled Plaintiff to institute this lawsuit to recover amounts that Plaintiff anticipates becoming due in the Underlying Action.

107.    Defendants' refusal to provide coverage and defend or indemnify Plaintiff in the Underlying Action is in bad faith and is an unreasonable action in breach of an implied covenant of good faith and fair dealing.

108.    As a direct and proximate result of Defendants' bad faith refusal to provide coverage and defend or indemnify Plaintiff under the CGL Policies, Plaintiff has been deprived of the benefits of the CGL Policies, and has sustained damages in an amount to be determining pending the litigation of the Underlying Action.

109.    As a result of Defendants' bad faith refusal to provide coverage to Plaintiff under the CGL Policies, Plaintiff is entitled to actual damages and/or consequential damages, punitive damages, reasonable attorneys' fees, costs, and expenses, together with pre-judgment interest.

### FOR A THIRD CAUSE OF ACTION
#### (Indemnification/Contribution)

110.    Each and every one of Plaintiff's prior allegations are incorporated herein as if fully restated.

111.    Any liability suffered by Plaintiff, as defendants in the Underlying Action, relates solely to the action of Plaintiff's subcontractors, Frank Leigh Painting, Scott Wadford, Imperial Tile, Red Bay Construction, AGL Services, Lepage, Muhler, Three Oaks, Advanced Concrete Cutting, Airtight Sprayfoam, Atlantic Stone, Aqua Blue Pools, Woodmaster's, Wyatt Childs, Clark's Services, JEM Construction, Simmons Plumbing, LMS Stucco, and D&J Custom Builders, who are Defendants' named insureds.

112.    Any liability suffered by Plaintiff, as a defendant in the Underlying Action, is attributable to, and should be borne solely by, Defendants, as they are Plaintiff's subcontractors' insurers.

## JURY TRIAL DEMANDED

113.    Plaintiff demands trial by jury as to all issues and counts in this Complaint triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter declaratory judgment on Plaintiff's First Cause of Action in favor of Plaintiff and against the Defendants that declares the rights and obligations of the Defendants under the CGL Policies with respect to the Underlying Action as follows:

   a. That the Underlying Action set forth claims that are covered under each of the CGL Policies;

   b. That the Defendants have an immediate duty to defend and indemnify Plaintiff with respect to the Underlying Action;

   c. That, pursuant to the Defendants' CGL Policies, Defendants are obligated to provide coverage to Plaintiff for "property damage" that occurs during the policy period, including any continuation, change or resumption of that "property damage" after the end of the policy period; and

   d. That Defendants have failed to adequately reserve the right to contest coverage under the CGL Policies and are thus precluded from doing so.

2. Enter Judgment in favor of Plaintiff and against Defendant on Plaintiff's Second Cause of Action and award Plaintiff actual and/or consequential damages, punitive damages, reasonable attorneys' fees, costs, and expenses, together with pre-judgment interest;

3. Enter Judgment in favor of Plaintiff and against Defendants on Plaintiff's Third Cause of Action and award to Plaintiff actual damages; and

4. Award to Plaintiff and against Defendants such other, further, and additional relief as the Court deems just and proper.

Respectfully submitted,

ETHRIDGE LAW GROUP, LLC

By: *s/ R. Michael Ethridge*
    R. MICHAEL ETHRIDGE
    Federal Bar No. 7497
    MARY S. WILLIS
    Federal Bar No. 12388
    1100 Queensborough Blvd., Suite 200
    Mount Pleasant, SC 29464
    843-614-0007
    methridge@ethridgelawgroup.com
    mwillis@ethridgelawgroup.com

*Attorneys for Solaris, Inc.*