# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| SOLARIS, INC., ) | Civil Action No.: 2:20-cv-4444-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **PLAINTIFF'S MEMORANDUM IN** |
| ) | **SUPPORT OF MOTION FOR** |
| AMERICAN SOUTHERN INSURANCE ) | **PARTIAL SUMMARY JUDGMENT** |
| COMPANY, NATIONWIDE MUTUAL ) | **AGAINST DEFENDANT** |
| FIRE INSURANCE COMPANY, ) | **NATIONWIDE PROPERTY AND** |
| NATIONWIDE PROPERTY AND ) | **CASUALTY INSURANCE COMPANY** |
| CASUALTY INSURANCE COMPANY, ) | |
| EMPLOYERS MUTUAL CASUALTY ) | |
| COMPANY, UNIVERSAL INSURANCE ) | |
| COMPANY, PEERLESS INDEMNITY ) | |
| INSURANCE COMPANY, PEERLESS ) | |
| INSURANCE COMPANY, BUILDERS ) | |
| MUTUAL INSURANCE COMPANY, ) | |
| NGM INSURANCE COMPANY, ) | |
| PENNSYLVANIA LUMBERMENS ) | |
| MUTUAL INSURANCE CO., OHIO ) | |
| CASUALTY INSURANCE COMPANY, ) | |
| OHIO SECURITY INSURANCE CO., ) | |
| FEDERATED MUTUAL INSURANCE ) | |
| COMPANY, PENN NATIONAL ) | |
| SECURITY INSURANCE COMPANY, ) | |
| AMERISURE MUTUAL INSURANCE ) | |
| CO., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Solaris, Inc. (hereinafter "Plaintiff" or "Solaris"), hereby moves for partial summary judgment against Defendant Nationwide Property and Casualty Insurance Company (hereinafter "Nationwide") with regard solely to Nationwide's duty to defend Plaintiff against the allegations asserted in the underlying construction defects lawsuit brought by Emily Heisley as trustee for the Agnes M. Heisley 2004 Trust, which is currently pending in the Charleston County

Court of Common Pleas, C/A No. 2017-CP-10-05298 (the "Underlying Action"). The grounds for Plaintiff's Motion are set forth within this supporting Memorandum of Law.

## I.     Nature of the Case

Solaris is in the business of new home construction. Solaris constructed a single-family residence located at 61 Eugena Street on Kiawah Island in South Carolina (the "residence"). Solaris contracted with various subcontractors to complete the work on the residence including, but not limited to, LMS Stucco, LLC ("LMS").

Solaris' written agreement with LMS required LMS to maintain commercial general liability insurance ("CGL") and to insure Solaris as an additional insured on LMS' CGL policy, as a condition to do work for Solaris at the residence. LMS purchased a CGL policy from Nationwide, Policy No. ACP GLKO 2322993855 with effective dates of February 18, 2010 through February 18, 2011. LMS provided Solaris with a certificate of insurance dated August 25, 2010, which identifies Solaris as a "certificate holder" and states that "Solaris, Inc. is included as an Additional Insured with respect to the General Liability for work performed by the named insured when required by written contract."

The Underlying Action generally alleges property damage resulting from alleged faulty construction performed by subcontractors, including LMS. During the time period that the plaintiff in the Underlying Action claim the property damage occurred, Solaris was an additional insured under Defendant Nationwide under Policy No. ACP GLKO 2322993855. After the Complaint in the Underlying Action was filed, Solaris demanded defense and indemnity with regard thereto. Despite having notice of the Underlying Action, Defendant Nationwide has refused, and continues to refuse to provide Plaintiff a defense in the Underlying Action.

On December 23, 2020, Plaintiff filed this action against Nationwide and other subcontractors' insurers who have similarly failed to provide a defense to Plaintiff against the Underlying Action. (ECF No. 1). The current operative pleading is the Third Amended Complaint, which was filed on July 13, 2021. (ECF No. 107). This action requests declaratory relief with regard to the Defendants' duties to defend and indemnify and Plaintiff asserts causes of action for bad faith refusal to pay first party benefits and indemnification/contribution.

**II.    Statement of Facts**

Solaris is a residential homebuilder who constructed the single-family residence located at 61 Eugena Street on Kiawah Island. (ECF No. 107 at 1 ¶1). The residence received its Certificate of Occupancy July 1, 2011. (ECF No. 107 at 7 ¶28). Solaris contracted with various subcontractors who performed work at the residence, including LMS Stucco. (ECF No. 107 at 7).

a.  Plaintiff's Subcontract with LMS

LMS performed insulation work at the residence pursuant to a written subcontract signed and dated on September 7, 2010 by LMS's representative. *See* Subcontract, a copy of which is attached hereto as Exhibit A. The written contract between LMS and Solaris does not contain an expiration date. *Id.* There is no evidence that either party provided any notice, written or otherwise, of termination of the contract. Solaris' written agreement with LMS required LMS to do the following, without limitation, as a condition of LMS performing work on the residence:

- Maintain commercial general liability ("CGL") insurance coverage, including completed operations coverage;

- To insure Solaris with primary coverage, including completed operations, as an additional insured on LMS' CGL insurance policies; and

- To provide Solaris with a certificate of insurance showing these coverages were in place prior to commence work at the residence.

*See id.* at 2.

b. Nationwide's Policy

Nationwide sold CGL Policy No. ACP GLKO 2322993855to LMS with effective dates of February 18, 2010 through February 18, 2011. *See* Exhibit B, Nationwide Policy. Nationwide's policy contains the following pertinent language within its "Commercial General Liability Coverage Form":

****

**SECTION I**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
  ...
  b. This insurance applies to "bodily injury" and "property damage" ...if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period.
   ...
  c. "Bodily injury" or "property damage" which occurs during the policy period...includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

****

Nationwide's Policy also contains the following Additional Insured Endorsement identified as CG 20 10 07 04. This Endorsement provides, in relevant part:

****

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Name of Additional Insured Person(s) or Organizations(s)

SOLARIS, INC.
1896 ANDELL BLUFF BLVD
JOHNS ISLAND, SC 29455

Location(s) Of Covered Operations

ALL LOCATIONS AT WHICH ONGOING OPERATIONS ARE BEING PERFORMED FOR THE ADDITIONAL PERSON(S) OR ORGANIZATIONS(S)

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:
  1. Your acts or omissions; or
  2. The acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply.
  This insurance does not apply to "bodily injury" or "property damage" occurring after:
  1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
  2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

****

5

*See* Exhibit B. Pursuant to LMS' contractual requirements with Plaintiff, LMS provided Solaris with a certificate of insurance dated August 25, 2010, which identifies Solaris as a "certificate holder" and states that "Solaris, Inc. is included as an Additional Insured with respect to the General Liability for work performed by the named insured when required by written contract." *See* Exhibit C, COI.

      c. The Underlying Action

Emily Heisley as trustee for the Agnes M. Heisley 2004 Trust filed the Underlying Action in the Charleston County Court of Common Pleas on October 16, 2017. *See* Exhibit D, Complaint. The Complaint seeks property damages from Solaris and LMS based upon repetitive and/or continuous property damage arising from allegedly faulty construction performed by Solaris and its subcontractors. *See generally id.*

On July 13, 2020, Plaintiff demanded defense and indemnity from Nationwide with regard to the Underlying Action. *See* Exhibit E, Tender Letter. Nationwide responded to the tender later on August 27, 2020 rejecting Plaintiff's tender for defense and indemnity as an additional insured. *See* Exhibit F, Response to Tender. To date, despite having notice of the Underlying Action and its allegations, as well as knowledge of the work performed by LMS at the residence, Defendant Nationwide has refused, and continues to refuse, to provide any defense for Plaintiff.

**III.    Standard of Review**

Summary judgment should be granted when a party demonstrates there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden to demonstrate to the court that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the moving party has made this threshold demonstration, the non-

moving party may not rest on the allegations averred in its pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue in order to survive the summary judgment motion. *Id.* The non-moving part must present "more than a mere 'scintilla of evidence' that a genuine dispute of material fact exist…or that there is 'some metaphysical doubt' as to material facts." *Auto Owners Ins. Co. v. Personal Touch Med. Spa, LLC*, 763 F.Supp.2d 769, 776-77 (D.S.C. 2011) (internal citations omitted). Conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion. *See Ross v. Commc'ns Satelitte Corp.*, 759 F.2d 355, 356 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Although during a typical summary judgment analysis the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party; here, where any internal inconsistencies exist within an insurance policy, the court must rule as a matter of law in favor of coverage, regardless of whom is the moving or non-moving party. *See Id.* at 777; *see also South Carolina State Budget & Control Bd., Div. of General Services, Ins. Reserve Fund v. Prince*, 304 S.C. 241, 248, 403 S.E.2d 643, 647 (1991) (internal citation omitted). Summary judgment is proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [and] there is no 'genuine dispute for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citations omitted). The "mere existence of some alleged factual despite between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

IV.    **ARGUMENT**

    a.  **Nationwide's failure to tender a defense to Plaintiff in the Underlying Action,**

### where the allegations in the Underlying Action clearly bring claims within coverage, amounts breach of Nationwide's duty to defend.

"An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." *Auto Owners Ins. Co. v. Rollison*, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." *Id.* (citing *Schulmeyer*, 579 S.E.2d at 134). However, an insurance contract which is "in any respect ambiguous or capable of two meanings" must be construed strictly against its drafter, the insurer. *Reynolds v. Wabash Life Ins. Co.*, 161 S.E.2d 168, 169 (S.C. 1968).

The duty to defend is separate and distinct from the obligation to pay a judgment. *Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha,* 236 S.E.2d 818, 819 (S.C. 1977). The insurer "[m]ust defend any suit alleging bodily injury or property damage seeking damages payable under the terms of the policy." *BLG Enters. Inc. v. First Fin. Ins. Co.,* , 514 S.E.2d 327, 330 (S.C. 1999). If the facts alleged in the complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend. *South Carolina Med. Mal. Liab. Ins. Joint Underwriting Ass'n v. Ferry*, 354 S.E.2d 378, 380 (S.C. 1987).

A South Carolina district court recently interpreted a similar additional insured endorsement finding in favor of coverage for the general contractor under its subcontractors' CGL policy. *See Dan Ryan Builders W. Va., LLC v. Main Street Am. Ass. Co.*, C/A No. 2:18-cv-00589-DCN, 2020 U.S. Dist. LEXIS 59197 (Apr. 2, 2020). That insurance dispute arose out of a

8

construction project managed by Dan Ryan Builders West Virginia, LLC, and Dan Ryan Builders of South Carolina, LLC ("DRB"). *Id.* DRB entered into a contract to construct new homes in a community known as the Foxbank Subdivision. *Id.* at 3. To complete its work under the contract, DRB hired several subcontractors including Southern Atlantic Construction, LLC ("Southern Atlantic"). *Id.* Southern Atlantic maintained a commercial general liability policy with State Auto during the time that it performed work for DRB on the project. *Id.*

Two construction defects lawsuits were filed against DRB following completion of the project, both of which alleged "property damage," such as "slabs and building components moving and/or cracking . . . repeatedly and/or continuously and continuing to occur causing damage to building components, the finish and structural elements of the home[s]." *Id.* at 4–5. On March 1, 2018, DRB filed a declaratory judgment action in the Charleston Division of United States District Court against its subcontractors' insurers seeking a declaratory judgment that the underlying lawsuits set forth claims that were covered under each of the insurer-defendants' commercial general liability policies, and therefore the defendant-insurers had a duty to defend and indemnify DRB in the underlying lawsuit. *Id.* In October of 2018, DRB filed a motion for partial summary judgment against State Auto requesting a declaration that it was entitled to additional insured coverage under its policy issued to Southern Atlantic. *Id.* at 5.

DRB argued State Auto had a duty to defend and indemnify DRB because the terms of the State Auto policy extended coverage to DRB as an "additional insured" pursuant to the additional insured endorsement in the policy. *Id.* at 9. In response, State Auto argued, among other things, DRB was not entitled to coverage because the policy expressly limits additional insured coverage to ongoing operations. *Id.* at 11–12. The State Auto policy included an additional insured endorsement, entitled "Additional Insured – Owners, Lessees, or Contractors

9

– Automatic Status When Required in a Construction Agreement," which provided:

****

    A. **Section II – Who is an Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:

        1. You acts or omissions; or
        2. The acts or omissions of those acting on your behalf;
        In the performance of your ongoing operations for the additional insured.

****

*Id.* at 10. In simplest terms, the district court explained that the endorsement provides additional insured coverage to DRB for "property damage" caused by Southern Atlantic if a written contract existed between DRB and Southern Atlantic that required Southern Atlantic to add DRB as an additional insured to the State Auto policy. *Id.* at 10–11.

The district court then applied the terms of the subcontract between DRB and Southern Atlantic to the express terms of the policy ultimately holding that the contract satisfied the terms of the Additional Insured endorsement. *Id.* at 11. Thus, the parties did not dispute that DRB was an additional insured to the State Auto policy at the time that Southern Atlantic was performing work at Foxbank. *Id.* However, State Auto argued that while DRB had "status" as an additional insured while Southern Atlantic was performing work at Foxbank, that status expired when Southern Atlantic completed its operations because the Additional Insured endorsement expressly limited the scope of additional insured coverage, providing that "[a] person's or organization's status as an additional insured under this endorsement ends when [Southern Atlantic's] operations for that additional insured are completed." *Id.* at 13. State Auto contended

these provisions excluded the underlying lawsuit from coverage because "[a]ny insured status enjoyed by DRB was extinguished at the time [Southern Atlantic]'s construction work was completed and/or put to its intended use." *Id.*

The district court agreed with State Auto that this provision "expressly limited the time and scope of any insured status which may be afforded to DRB" and that DRB's status expired upon completion of Southern Atlantic's work. *Id.* However, the district court held that the underlying lawsuit alleged DRB acted negligently during construction, at which time DRB would have been an additional insured under the policy. *Id.* The district court held that the State Auto policy made clear that an insured receives coverage for claims that arise from an "occurrence" or "property damage" that occurs during the policy period, even if the claim that arises therefrom is made after the policy period. *Id.* In other words, according to the Court, the critical question was not whether DRB had additional insured status at the time the underlying lawsuit was filed, but whether DRB was an additional insured when the property damage alleged in the underlying lawsuit occurred. *Id.* In answering this question, the district court, relying on well settled case law, found the State Auto policy unambiguously extended coverage to DRB for property damage allegedly caused by Southern Atlantic that occurred (1) during the State Auto policy period and (2) while DRB had additional insured status, i.e., while Southern Atlantic was performing work on Foxbank. *Id. (citing Crossman Comm'n of N. Carolina, Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 594 (S.C. 2011) (finding that damage caused by allegedly negligent construction constituted "property damage" and occurred at the time of the negligence).

The result should be no different here. Solaris' written agreement with LMS required LMS to maintain commercial general liability insurance and to insure Solaris as an additional insured

11

on LMS' CGL insurance policy. The insurance provisions are located at Article 5 in the subcontract between the parties, which was initialed, signed and dated by LMS's representative. *Id.* The express terms of Nationwide's policy extends coverage to Solaris as an additional insured for "property damage" caused by an "occurrence" that occurred during the "policy period" when the work was ongoing. Akin to DRB, the Underlying Action alleges Solaris acted negligently during construction, which falls within Nationwide's policy period of February 18, 2010 through February 18, 2011. The critical question, therefore, is not whether Solaris had additional insured status at the time the underlying lawsuit was filed, but whether Solaris was an additional insured when the property damage alleged in the underlying lawsuit occurred. The answer to that question is an unequivocal "yes."

Whether Nationwide ultimately has a duty to indemnify Plaintiff or LMS for the damages alleged in the Underlying Action is irrelevant at this time. However, Nationwide's failure to tender a defendant to Plaintiff in the Underlying Action, where the allegations in the Underlying Action undoubtedly bring claims within Nationwide's policy, amounts to bad faith and a breach of Nationwide's duty to defend.

**V. Conclusion**

As shown herein, pursuant to Plaintiff's written contract with LMS, the terms and conditions of Nationwide's Policy No. CP 0042338 00, the allegations asserted in the Underlying Action, and the Certificate of Insurance produced to Plaintiff, Defendant Nationwide has breached its duty to defend Plaintiff in the Underlying Action. Therefore, Plaintiff respectfully requests this Court issue an Order granting its Motion for Partial Summary Judgment against Defendant Nationwide, with regard solely to the duty to defend.

*{Signature page to follow}*

Respectfully submitted,

ETHRIDGE LAW GROUP, LLC


By: *s/ R. Michael Ethridge*
    R. MICHAEL ETHRIDGE
    Federal Bar No. 7497
    MARY S. WILLIS
    Federal Bar No. 12388
    1100 Queensborough Blvd., Suite 200
    Mount Pleasant, SC 29464
    843-614-0007
    methridge@ethridgelawgroup.com
    mwillis@ethridgelawgroup.com

*Attorneys for Plaintiff*